UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

**RECEIVED**

DEC 1 4 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Demetrius Whitney,
        Plaintiff

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

                    vs.

Officer C/O Lin (first name
                    unknown)
_____

Lynn Chattic
_____

Nedra Chandler
_____

Charles Fasano
_____

Wexford Health Source,Inc.
        Defendants
_____

Case No: _15- 50311_
(To be supplied by the Clerk of this Court)

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

___***___   COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
            U.S. Code (state, county, or municipal defendants)

_____   COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
            28 SECTION 1331 U.S. Code (federal defendants)

_____   OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. Plaintiff:

A. Name:Demetrius Whitney
B. List all aliases:None
C. Prisoner identication number:B-02940
D. Place of present confinement:Dixon Correctional Center
E. Address:2600 North Brinton Ave, Dixon,IL.61021


II. **Defendants:**

A. Defendant: Officer Lin (first name unknown)
   Title: Correctional Officer
   Place Of Employment: Dixon Correctional Center


B. Defendant: Lynn Chattic
   Title: Medical Nurse
   Place of Employment: Dixon Correctional Center/Wexford


C. Defendant: Nedra Chandler
   Title:Cheif Administrator Officer,Warden (at time of injury)
   Place of Employment:Dixon Correctional center (at time of injury)


D. Defendant: Charles Fasano
   Title: Asst.Warden (Acting Health care Administrator) (at time
   Place of Employment: Dixon Correctional Center          of injury)
                        (at time of injury)


E. Defendant:Wexford Health Sources,Inc.
   Title: IDOC Health Care Provider
   Place of Employment:Illinois Department Of Corrections

2

III.    **Exhaustion of Administrative Remedies**

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.    Is there a grievance procedure available at your institution?

YES (X) NO ( )  If there is no grievance procedure, skip to F.

B.    Have you filed a grievance concerning the facts in this complaint?

YES (X) NO ( )

C.    If your answer is **YES**:

1.    What steps did you take?

Filed an emergency grievance to Warden Chandler on September 19, 2013

2.    What was the result?

Warden Chandler determined that plaintiff did not substantiat that

his grievance was an emergency (emergency was denied). Plaintiff

filed the grievance to the Grievance Committee, where James Martens
denied said grievance on April 15, 2014 (and concurred by Warden Chandler).

3.    If the grievance was not resolved to your satisfaction, did you appeal? What was the result (if there was no procedure for appeal, so state.)

Plaintiff appealed the grievance to the Administrative Review Board

on April 30, 2014, but the ARB still have not answered plaintiff's
appeal (eventhough he has made several inquiries).

D.    If your answer is **NO**, explain why not:

N/A

3

E.    Is the grievance procedure now completed?  YES ( ) NO (X) However, the the two year limitation period from the date of injury is quickly approching.

F.    If there is no grievance procedure in the institution, did you complain to authorities?  YES ( )  NO ( )

G.    If your answer is **YES**:

    1.    What steps did you take?

    N/A

    2.    What was the result?

    N/A

H.    If your answer is **NO**, explain why not:

    N/A

Plaintiff is filing this 1983 Complaint now because in June, 2015, after inquiring about the status of his grievance, the ARB informed him to "provide a copy of Grievance, DOC 0046 & 0047, including the counselor's response" and plaintiff provided copies of said grievances but still have not received an answer or response.  On September 12, 2015, it will be two years from the date of plaintiff's injury and he do not want to miss his dead line waiting on the ARB's response.  Plaintiff further believe that the IDOC is trying to sabotage the required exhaustion of his claim, which would be their only defence aginst this suit.

IV. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):

A. Name of case and docket number: <u>Whitney v. Hamilton et al., Case No. 11 C 8872</u>

B. Approximate date of filing lawsuit: <u>December, 2011</u>

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: <u>Demetrius Whitney</u>

D. List all defendants: <u>Janelle Hamilton; Richard Rodriguez (Chicago Police Officers); and the City of Chicago Police Department.</u>

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): <u>Northern District of U.S. District Court, Eastern Division of Illinois.</u>

F. Name of judge to whom case was assigned: <u>Honorable Ruben Castillo</u>

G. Basic claim made: <u>Excessive Force (plaintiff was unlawfully shot 8 times by the Chicago Police).</u>

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): <u>Settled on May 3, 2013</u>

I. Approximate date of disposition: <u>May 3, 2013</u>

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

## V. Statement Of Facts:

1. During the arrest which led to the Plaintiff's incarceration in 2009, he was unlawfully shot eight times by the Chicago Police. One of the eight shots shattered Plaintiff's right elbow and he underwent ORIF.

2. Thereafter, Plaintiff underwent several additional surgeries, and suffered multiple bouts with infection in said elbow. Due to the Plaintiff's many injuries and complications, he have been housed in the Health Care Unit since his arrival at Dixon Correctional Center in 2009.

3. On September 12,2013 while changing the channels on his t.v, Plaintiff heard and felt the bone brake in his right elbow.

4. While in severe pain the Plaintiff requested the 3rd floor Health Care Officer,Def.Lin assistance on sending him(Plaintiff) downstairs to the 1st floor Medical Ward, so "he could receive emergency medical care for his obvious(**bone pushing up under the skin**) broken  elbow."

5. Def. Lin made his own medical assessment of Plaintiff's obvious broken elbow, and stated:"Plaintiff's situation was non-emergency, and that he(C/O Lin) was not calling **or** sending Plaintiff downstairs to the Medical Ward, **but** Plaintiff could sign-up for Sick Call." Plaintiff had no other choice but to sign-up for Sick Call, and endure days of extreme pain and discomfort until a Sick Call pass be deliver to him.

6. On or about September 14,2013 Plaintiff was seen by Dr.Smith concerning his broken right elbow, which after examination and learning the medical history of said elbow, "Dr.Smith order that a x-ray be taken of Plaintiff's right elbow, and a few days of pain medication(Tylenol) be prescribed, which said pain medication was discontinue on or about September 19,2013." Moreover, the aforemention medication provided little to no relief. t

6

7. On or about September 19,2013 Plaintiff received a medical call pass to have an x-ray taken of his right elbow.

8. On or about September 19,2013 Plaintiff filed an ' Emergency Grievance' to the Cheif Administrator Officer, Def. Warden Nedra Chandler regarding denied adequate medical care for a serious medical need by the Medical Staff at Dixon C.C. . Also, Plaintiff sent Def.Chandler a letter making her aware that said grievance had been sent to her, and requesting her Administration assistance on "speaking with the Medical Personnel about providing Plaintiff needed medical care for his right elbow". However, Plaintiff received his grievance back on or about 9-30-13 stating:"it was non - emergency". As well, no response was made to Plaintiff's letter to Def.Warden Chandler.

9. On or about September 20,2013 Plaintiff awoke to so much **unbearable pain and swelling** in his right elbow, that he requested the assigned 3rd floor Health Care Unit Officer, Fergerson, to send him(Plaintiff) downstairs too the 1st floor Medical Ward for emergency medical treatment, because "Plaintiff has a broken right elbow from over a week ago, and it appears an infection is setting in."
C/O Fergerson called downstairs and spoke with Def.Nurse Lynn Chattic concerning Plaintiff's medical condition,and his(plaintiff's) need of care;**however**,"Def.Chattic without so much of even viewing Plaintiff's right elbow made an over-the-phone assessment, that **Plaintiff will be just fine and for him to sign-up for Sick Call, if he would like to be seen by the Medical Staff."**
Plaintiff had no choice but to sign-up for Sick Call, and wait a few days while suffering in **extreme pain and discomfort**. Also, Def.Nurse Chattic has a history of being bias,unprofessional,and disrespectful towards Residents at Dixon C.C. (specifically adhearing to IDOC's Medical Directives,Procedures,& Policies).

7

10. On or about 22,2013 Plaintiff still had not received a
    medical call pass for requested sick call appointment
    concerning possible infection and broken right elbow.
    However, Def.Assistance Warden, Charles Fasano (who) was
    acting as the 'Health Care Unit Administrator' was present
    at the Health Care Unit, and Plaintiff showed Def.Fassano
    his(Plaintiff's) right elbow and how swollen/infected it
    looked. **Moreover**, Plaintiff pleaded with Def.Fasano to
    assist him(plaintiff) with receiving adequate needed care...
    Def.Fasano made a personal medical assessment that because
    **Plaintiff was not dying and/or laying unconscious, that
    he(Fassano) didn't believe Plaintiff's medical concerns would
    be deem an 'Medical Emergency' by the Medcial Staff at
    Dixon C.C.**"
    Then Def.Fasano assured Plaintiff that he(plaintiff)
    would be seen by a Doctor tomorrow Sept.23,2013, which
    never happen.

11. On or about September 23,2013 Plaintiff received a Sick
    Call Pass appointment, which he(plaintiff) was seen by
    Nurse Gabucci (who) stated:"she didn't know when Plaintiff
    would be seen by a Doctor, and she was only following up
    on his(plaintiff's) Sick Call request from a few days ago.
    **However**, after Nurse Gabucci observed Plaintiff's right
    elbow and seen the condition thereof,"she placed Plaintiff
    on the Doctor's call line."

12. On or about September 25,2013 Plaintiff was called downstairs
    to the 1st florr Medical Ward and was seen by Nurse Jassic
    Peck and Doctor Domenguez, which when **they examine Plaintiff's
    right elbow, they had an expression of shock on their faces**".
    Moreover, Nurse Peck stated:"we need to send him to a outside
    hospital, but I know KSB Hospital will not accept him,because
    of his(plaintiff's) medical history."
    Nurse Peck further stated:"I can't deal with this type of
    stuff anymore." That was Plaintiff's last time of seeing
    Nurse Peck.

13. On or about September 27,2013 Plaintiff was finally taken
    out on an emergency medical appointment too the University
    Of Illinois Medical Center, to be treated for an 'infection,
    **swelling and severe pain from his right elbow to his hand
    and his shoulder."**

14. On or about September 30,2013 the Medical Center was required
    to perform another surgery for the removal of excess bone
    debris. Moreover, Dr.Benjamin A. Goldberg of the University
    of Illinois Medical Center concluded:**"if patient(plaintiff)
    develops another clinically apparent infection in the future,
    he might need another surgery or might need an <u>amputation</u> to
    definitively get rid of the infection."**
    Also, Dr.Goldberg told Plaintiff that "he(Goldberg) was surprised
    that the **Medical Staff at Dixon C.C. did not treat this as an
    <u>urgent</u> matter when it first happen,** knowing his(plaintiff's)
    extensive medical history."

15. Wexford Health Source,Inc. is reliable under contract to the
    Illinois Department of Corrections(IDOC), to provide adequate
    medical care to the Residents of IDOC.  As well, Def.Wexford's
    appointed 'Medical Personnel' at Dixon C.C. should've been
    properly trained, to assure(supervise) that **"Wexford Health
    Source,Inc.'s contractual 'Medical Procedures,Policies,
    Guidelines,& Protocals' for providing <u>adequate</u> <u>community</u>
    <u>standard</u> of <u>medical</u> <u>care</u> to IDOC Residents be upheld."**
    Yet, its apparent that professional standards of Medical
    Personnel is lacking at the Dixon C.C. (specifically doing
    the time of Plaintiff's injury and need of serious medical
    treatment, but **"saving money from lack of adequate medical
    care is the main objective."**

9

## Count I

**Cruel And Unusual Punishment/**
**Deliberate Indiffernce To A**
**Serious Medical Need**

16. Plaintiff incorporates par.3-7 of Def.C/O Lin's
(first name unknown) cruel and unusual punishment/
deliberate indifference to a serious medical need.
Whereas, Def.Lin's acts and omission was done knowingly
with malice and great disregard towards the Plaintiff's
need of serious medical care and suffering of pain
and discomfort.

## Count II

**Cruel And Unusual Punishment/**
**Deliberate Indiffernce To A**
**Serious Medical Need**

17. Plaintiff incorporates par.9-15 of Def.Lynn Chattic's
cruel and unusual punishment/deliberate indifference
to a serious medical need. Whereas,Def.Chattic's
acts and omission was done knowingly with malice and
great disregard towards the Plaintiff's need of serious
medical care and suffering of pain and discomfort.

## Count III

**Cruel And Unusual Punishment/**
**Deliberate Indiffernce To A**
**Serious Medical Need**

18. Plaintiff incorporates par.8-10 of Defendants
Warden Nedra Chandler and Asst. Warden Charles Fasano
cruel and unusual punishment/deliberate indifference to
a serious medical need. Whereas, said Defendants' acts
and omission was done knowingly with great disregard
towards the Plaintiff's need of serious medical care
and suffering of pain and discomfort.

**Count IV**

**Cruel And Unusual Punishment/
Deliberate Indiffernce To A
Serious Medical Need**

19. Plaintiff incorporates par.6,7,9,10,11,12,13,14,& 15
    of Def.Wexford Health Source,Inc.'s cruel and unusual
    punishment/deliberate indiffernce to a serious medical
    need.  Whereas, Def.Wexford acts and omission was done
    knowingly with great disregard towards the Plaintiff's
    need of adequate medical care and suffering of pain
    and discomfort.

## CONCLUSION

In light of the above stated facts and claims, your Plaintiff, Demetrius Whitney, pray that this Honorable Court will find that the above named defendants actions or lack thereof constitutes an unnecessary and wanton infliction of pain and suffering, which was deliberately indifferent to his serious medical needs.

Plaintiff seeks an award of monetary compensatory and punitive damages **(in a amount yet to be determine)** from all the named Defendants in this cause of action.

Respectfully submitted,

M. Demetrius Whitney #B02940

## Certification

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

SUBSCRIBED AND SWORN TO BEFORE ME

ON THIS 22 DAY OF AUGUST, 2015

NOTARY PUBLIC

M. Demetrius Whitney #B02940
Demetrius Whitney, #B02940
Dixon Correctional Center
2600 N. Brinton Ave.
Dixon, Illinois 61021

"OFFICIAL SEAL"
SALLY A. JOOS
Notary Public, State of Illinois
My Commission Expires 07/12/2016

12

# E X H I B I T S

1(a).  U of I Medical Center Clinic Progress Note of: Benjamin A. Goldberg, MD
1(b).  "                                                                                    "

2.  List of Plaintiff's prior injuries & medications record.

3(a).  Plaintiff's Emergency Grievance (filed on September 19, 2013)
3(b).  "                                                                                    "

4.  Grievance Officer & Chief Administrative Officer's Response (dated 4/15/14)

5.  Plaintiff's initial request for status

6.  Plaintiff's request for status on his pending grievance with ARB

7.  Plaintiff's 4/23/15 Affidavit requesting status on his grievance

8(a).  Plaintiff's 5/19/15 Affidavit requesting status on his grievance
8(b).  "                                                                                    "

9.  ARB's response to Plaintiff's request for status

# A P P E N D I X

MOTION FOR RECRUITMENT OF COUNSEL (and attached letters in response)

IN FORMA PAUPERIS APPLICATION AND FINANCIAL AFFIDAVIT

*Ex. 1 (a)*

<u>This report is a medical document and should be treated as confidential information</u>

University of Illinois Medical Center
1740 West Taylor Street Chicago, IL 60612
312-355-4000

## Clinic Progress Note- ATTENDING:.Benjamin A Goldberg, MD

| | |
|---|---|
| PATIENT: | WHITNEY, DEMETRIUS |
| MRN: | 80693616 |
| DATE OF BIRTH: | 08/09/1971 |
| GENDER: | MALE |
| NOTE TYPE: | Orthopedic Note |
| VERIFIED BY: | |
| NOTE DATE: | Feb 09,2015 |
| NOTE STATUS: | Transcribed |

---

### Clinic Progress Note- ATTENDING:.Benjamin A Goldberg, MD

University of Illinois Hospital & Health Science Systems

CLINIC NOTE                    PATIENT:  WHITNEY, DEMETRIUS

DICT:  ROHIT GARG, MD          MRN:  080693616
ATTNG:  BENJAMIN A GOLDBERG, MD    DATE OF SERVICE:  02/09/2015

DATE OF BIRTH:  08/09/1971

REASON FOR VISIT:  The patient has been referred by Infectious Disease to
evaluate if hardware can be removed from the right elbow.

HISTORY OF PRESENT ILLNESS:  The patient is a 43-year-old incarcerated male
with recurrent right upper extremity infection, here for followup.  The
patient is well known to our service regarding multiple surgeries on the
right
elbow.  This patient suffered a gunshot wound to the right elbow in 2009
and
underwent ORIF.  He also had ulnar nerve palsy related to the gunshot
wound.
Eight months after that, the patient had the plates removed and underwent
manipulation due to lack of motion, and in 2011 he underwent another
surgical
procedure with ex-fix and intra-position arthroplasty with Achilles tendon
allograft; however, he developed an infection, was taken for an I and D and
excision of sinus tract infection of the right elbow on 05/04/2012.  He was
started on clindamycin and seen on 07/02/2012 in clinic.  He still had a
sinus
tract present after 6 weeks of clindamycin and continued the clindamycin
for 6
more weeks and then seen in clinic on 08/07/2012.  No longer had drainage
from
the elbow.  He was instructed to follow up p.r.n.  Infection returned and
he
again presented to the clinic on 09/27/2013 with swelling of the right
upper
extremity and severe pain with any range of motion of the elbow.  It was
found
that he had another infection, for which he was taken for a right elbow

*Return Here, Grievance matter/complaint*

*Ex. 1 (b)*

PATIENT:    WHITNEY, DEMETRIUS
MRN:        80693616

arthroscopy, irrigation and debridement, and removal of loose bodies on
09/30/2013.  He did well after that surgery and was also following up with
ID
for IV vancomycin, as well as oral suppression.  The patient stated that he
has been taking minocycline for oral suppression and denies any recent
fever,
chills, nausea, vomiting.  Denies any drainage from the elbow.  Denies any
erythema or swelling around the elbow.  States that his range of motion has
been improving.  Denies any significant pain around the elbow.  He is
coming
to see us today with a note from ID to see if hardware can be removed from
the
elbow.

PHYSICAL EXAMINATION:  Patient is awake, alert, in no acute distress.
Examination of the right elbow shows incision which is clean, dry, intact.
No
erythema.  No drainage.  There is no warmth on the right elbow.  The
patient
can move the right elbow from about 10 degrees to 100 degrees actively and
10
degrees to 120 degrees passively.  The patient has almost full pronation
and
limited supination.  Patient also has some 1st dorsal interossei wasting,
as
well as positive Wartenberg sign and some tingling, and sensation is
decreased
to light touch in the ulnar nerve distribution in the right hand.
Otherwise,
patient can make a grip and has sensation intact in other nerve
distributions.
Has good cap refill in all the fingers.

IMAGING:  X-ray was taken today which shows no evidence of any hardware in
the
right elbow.

ASSESSMENT AND PLAN:  This is a 43-year-old incarcerated male with history
of
multiple surgeries to right elbow including open reduction internal
fixation
complicated with plate removal complicated by infection, incision and
drainage, removal of hardware.  Date of surgery was on 09/30/2013 for right
elbow arthrotomy, irrigation and debridement, removal of loose bodies.  The
patient is doing fine at this time.  We do not see any evidence of any
hardware.  Patient is following up with Infectious Disease for oral
suppressive antibiotics and from our understanding the patient will
continue
to be on those oral suppressive antibiotics with the infectious disease
doctors.  The patient does not have any evidence of hardware in the right
elbow and we do not plan on performing any surgery on the right elbow
unless
the patient develops another clinically apparent infection.  If patient
develops clinically apparent infection in the future, he might need another
surgery or might need an amputation to definitively get rid of the
infection.
For now, the patient will follow up in our clinic on a p.r.n. basis.  We
also
wrote all this down in the note to the infirmary.  The patient will follow
up
with us on a p.r.n. basis.  All his questions were answered in a
satisfactory
manner.  Patient was seen and examined with Dr. Goldberg who agrees with

*Ex. 2*

Demetrius Whitney

DOB 08/09/1971

ID # B02940

1. Was shot 8 times from the rear post being tazed twice.
2. Lost his entire right kidney, only one kidney remains
3. Lost a portion of the liver
4. Part of his intestines were removed
5. Had a colonectomy (lower portion of colon removed)
6. Cannot pass bowels voluntarily, must take a stool softener and/or laxative to assist
7. Half of the lower right rib was removed
8. On the left hand, the second to fourth digit has no nerve function/feeling due to being shot in the hand
9. Right elbow has very limited mobility/flexibility and no extension. Was shot in the elbow and as a result, it shattered the entire elbow bone. A steel plate is now in place permanently.
10. Has a reoccurring infection (abdominal) which requires frequent hospitalization and surgery (to wash out the abdominal cavity in an effort to counteract the infection). For the past three to four months, an abdominal drainage bag has been in place to drain the fluid (infection) from the abdominal cavity that persistently builds up
11. Currently has blood clots in his upper and lower extremities and must take blood thinning medication
12. One of the blood clots is near his heart, has a wire inserted through his neck to block the clot. It may possibly be permanent.

Current Medications

1. Docusate 100mg
2. Coumadin 5mg
3. Gabapentin 400mg
4. Folic Acid 1mg
5. Vitamin C 500mg
6. Vitamin B 100mg
7. Magnesium Oxide 400mg
8. Zinc Sulfate 220mg
9. Ferrous Sulfate 325mg
10. Elavil 500mg
11. Tylenol #3
12. Bactrim
13. Alendronate Sodium 70mg
14. Sinethicone 80mg

Please see Demetrius Whitney's medical records from December 2009 to current to note the extensive degree of injuries he sustained as well as the continuous plan of care he undergoes and requires.

**OFFENDER'S GRIEVANCE**

3-6-07

ID#: B-02940

Ex 3(a)

| Date: 9-12-2013 | Offender: (Please Print) Demetrius Whitney | | ID#: B-02940 |
|---|---|---|---|
| Present Facility: Dixon Correctional Center | | Facility where grievance issue occurred: Dixon Correctional Center | |

#3 R6

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify):

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report      Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On 9-12-2013 my elbow on my right arm broke while I was changing the channel on my TV, so I asked the officer if I could go see the doctor because my arm was broke and even visually so the eye could see my arm was broke. I was still told to put in for sick call which I did and the next day which was 9-13-2013 I was not called to see the doctor so I filled out again to see the doctor on sick call. Saturday morning I received a callpass to see the doctor which was Dr. Smith.

**Relief Requested:** To receive a MRI and to be sent to Dr. Benjamin Goldberg at UIC Ortho who removed my elbow. This is an emergency matter that should not be taken lightly.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Whitney      B02940      ____ / ____ / ____
Offender's Signature      ID#      Date

*(Continue on reverse side if necessary)*

Notice, they stated this was not An Emergency

| **Counselor's Response (If applicable)** | |
|---|---|
| Date Received: 10, 5, 13 | [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
| Response: _____ | |
| _____ | |
| _____ | |
| _____ | |
| _____ | |
| Print Counselor's Name | Counselor's Signature     Date of Response ___/___/___ |

| **EMERGENCY REVIEW** | |
|---|---|
| Date Received: 9 / 30 / 13 | Is this determined to be of an emergency nature?   [ ] Yes; expedite emergency grievance   [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
| Chief Administrative Officer's Signature | 9/30/13 Date |

Printed on Recycled Paper

Dr. Smith said that he would put me in for X-Ray's. Along with his viewing of my broken elbow and his knowledge of my various surgeries dealing with my elbow. I received a call pass to go to X-Ray which was Connie Glenn. After the X-Ray she told me to cross my fingers and then said your elbow is good. I replied how? when I don't even have an elbow. She said it looks good. As of today's date 9-19-2013 I'm on the last of the Tylenol 500 that Dr. Smith prescribed for me Saturday. Personally I should have received an MRI and I should be sent back to Benjamin Goldberg at UIC. Yet I realize that it's evident that Wexford and/or it's personnel main objective is to save money.

9-20-2013 Nurse Chattie at 92:00 pm to C/o-Ferguson That it's not an emergency and That I should Sign up for Sick call'! Again!

9-22-13 6:50 pm WARDEN FASSANO Stated the He Would PERSONALLY Have me To See A DOCTOR on 9-23-13, Yet No PASS To See A DOCTOR, NOR Did I See A DOCTOR. Sick call NuRSE Ms. Grabucci was told, They don't Know When A DoctoR Will see whitney
1) medical neglagence
2) DiliberRate IndiFFieRence
3) pain And SuffeRing
4) CRuel And unusual PunishmenT
5) Medical MalepRactice

*Ex. 4*

**Facts Reviewed:** This Grievance Officer notes Inmate Whitney's grievance. Inmate Whitney claims his right elbow broke while changing the channel on his TV. Inmate Whitney indicates he saw Dr. Smith and x rays were ordered and Tylenol was prescribed. Inmate Whitney feels he should receive an MRI and be sent back to Dr. Goldberg at UIC.

This Grievance Officer notes all treatment must be ordered by the licensed physician at this facility and not a matter of inmate preference. This Grievance Officer has no authority to evaluate clinical decisions made by licensed physicians.

Per Health Care Administration, medication and treatment are ordered based of clinical symptoms and assessment by the Medical Professional and not a matter of inmate request.

**Recommendation:** Based upon a total review of all available information, this Grievance Officer is reasonably satisfied offender has access to health care and recommends the grievance be denied.

c: Health Care

James Martens / Grievance Officer
Print Grievance Officer's Name
**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

Grievance Officer's Signature

---

**Chief Administrative Officer's Response**

Date Received: 4/15/14      [✓] I concur      [ ] I do not concur      [ ] Remand

Comments:

Chief Administrative Officer's Signature                    4/15/14
                                                            Date

---

**Offender's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature          B02940          4/30/14
                              ID#             Date

Master File; Offender          Page 1          DOC 0047 (Rev. 3/2005)

Date Sept.20,2013

TO: Cheif Administrative Officer, Warden Chandler

RE: Need Of Serious Medical Care From The
Medical Staff For My Broken Elbow

FROM : Demetrius Whitney B-02940

Dear Warden Chandler, I am respectfully writing you
this letter requesting your assistance on (PLEASE) helping
me to get some much needed medical treatment for my right
elbow, which I heard & felt break over a week ago while
changing the channel on my t.v. Yet, I am constantly being
denied medical treatment by the Medical Staff here at
Dixon C.C. (I filed an Emergency Grievance to you regarding
this matter, so please be on the look out for it, and once
again (PLEASE!) speak with the Medical Personnal about
providing me much need treatment for my right elbow).

"Thank You With Hopes Of hearing From You Soon!"

Sincerely :

Ex 5

Whitney  B02940                          HC3-14

Your medical grievance was forwarded to AW Fasano's
attention for medical dept response on 11-20-13.

K.Chavera CCII

2/4/14

Note, Where Is my Grievance on
giving me The wrong medication with
Coumadin Blood Thiner, DR. Smith said
I Should not Have ever Been Taking
Coumadin with Neurotin/Noproxin, Took
me Off Of It, gave me Tylanol—That
Say when I Saw Him About my Broken
ARM. I wrote The grievance with
Broken ARM Grievance, now Its Lost.

5/19/15    Ex. 6

What IS
The ETA

On MY GRievances?
Do you All Have
Them,? Status,?
Pending? What?

B-02940

RECEIVED

MAY 2 2 2015

ADMINISTRATIVE
REVIEW BOARD

Ex. 7

STATE OF ILLINOIS )
) SS
COUNTY OF LEE )

AFFIDAVIT

I, _MR.D.Whitney #B02940_ of the city of Dixon, County of Lee,

and the State of Illinois, being duly sworn upon oath, depose and say:

I need To Know The Status OF My
2 Seperate Grievances That I
Sent To you FOR Appeal/Review.
The Statue OF Limitation IS
OVER due on various Levels.
Grievance date OF 7/29/13 - Heard on 4/7/14 - Denied
med-Treatment
Grievance date OF 9/19/13 Heard on 4/15/14 - Broken Arm

MR. Demetrius Whitney

Subscribed and sworn to before me this
23 rd day of _April_, 20 15

_Sally A. Joos_
Notary Public

RECEIVED

MAY 2 2 2015

ADMINISTRATIVE
REVIEW BOARD

"OFFICIAL SEAL"
SALLY A. JOOS
Notary Public, State of Illinois
My Commission Expires 07/12/2016

STATE OF ILLINOIS     )
                      ) SS          *Ex. 8*
COUNTY OF *Lee*       _)

## AFFIDAVIT

I, *Demetrius Whitney* ___ being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

The following is to prevent Wexford Health Sources/And or their Legal Counsel from Any Attempt to Have my Suit dismissed on the Grounds of Asserting that I failed to exhaust my Remedy. A great deal Has been done to prevent me from Due process/exhausting Remedy. Bullock V. Horn, 2000 WL 1539171, *2 (M.D. Pa., Oct. 31, 2000/Holding Allegation that prison officials Returned Grievances unprocessed, without Grievance numbers, making Appeal Impossible Was sufficient to defeat A motion to dismiss. Also, Holding that Said plaintiff Asked to see the Grievance Officer Wich I've done myself Repeatedly, As well As Wardens, Health Care Administrator, Director of Nursing/D.O.N, but Was Never Called. Also Note that Courts may be Very Skeptical of Claims that you Have Exhausted Your Remedies when there is no Record of Your Actions, or of Claims that you were not Informed or misinformed About the Grievance process. It is therefore prudent to do everything you can to exhaust even if you Know the effort is going to fail - And to Keep Your own Records to Help prove you tried, Which I myself Have done, All to no Avail, Thus the purpose of this Affidavit. Most often, Wardens Etc. Refuse to Have Call Lines to discuss matters with Inmates, which is Another Way in Which one may Attempt to exhaust Thus said Remedy. The Seventh Circuit Has Held that A Remedy becomes "Unavailable" if prison employees Try to Take unfair advantage of the Exhaustion Requirement -

RECEIVED
MAY 2 2 2015
ADMINISTRATIVE

(Over)

Ex. 8(a)

by not Responding To A grievance or otherwise preventing A prisoner from exhausting Remedy. When you Have exceeded Any And All that's Available To the prisons Requirements, That define the boundaries of proper exhaustion. And the Facility does not meet their own Standards Required by Law, you Then Have the constitutional Right To proceed Further-due process/I e Fed 1983 Suite.

With this being said, This Is my Letter/notice/Affidavit As yet Another Attempt To Find out the Status of my Complaints/Grievances dates of 4-7-14 med TREAT, 7-29-13, 9-19-13 And 4-15-14 BROKE ARM I Have Fully exhausted my Remedies, I've gone Above And beyond the expectations set forth for grievance process/ proceedures, In order To Fully exhaust my Remedies, which Have been Fully dated/documented-which encludes this Affidavit. I now give notice that I will now proceed Further, In order to excercise my thus said Right for/to due process which encludes A 1983 Fed Complaint. I ask that the Court acknowledge this document, Along with other documentation As presented as every Attempt And beyond to exhaust said Remedies.

_____
AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 15th DAY _____May_____, 20 15

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
SALLY A. JOOS
Notary Public, State of Illinois
My Commission Expires 07/12/2016

RECEIVED
MAY 2 2 2015
ADMINISTRATIVE
REVIEW BOARD

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board
Return of Grievance or Correspondence**

*Ex. 9*

Offender: _Whitney_ _Demetrius_ MI ___ ID# _B02940_
Last Name   First Name

Facility: _Dixon_

☐ Grievance: Facility Grievance # (if applicable) _____ Dated: _____ or ☑ Correspondence: Dated: _5/19-15_

Received: _5/22-15_ Regarding: _Grievance Process – inquired about grievance status_
Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

#1 ☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

#2 ☑ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to: Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL 62706

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____.
Date

☐ No justification provided for additional consideration.

☑ **Other** (specify) _Offender's Grievance regarding funds withdrawn from his account was returned to offender 1/7-15, grievance regarding IDR 9/17-14 was returned to offender 12/1-14 both grievances ARB requested #1 and #2 responses._

Completed by: _Billie W. Greer_     _Billie W. Greer_ 3k    _5/27/15_
Print Name                          Signature                Date

Distribution: Offender    Printed on Recycled Paper    DOC 0070 (Rev.4/2013)
Inmate Issues

Case: 3:15-cv-50311 Document #: 1 Filed: 12/14/15 Page 27 of 29 PageID #:27

# OPINION

## ⫼ EDITORIAL

# WARNING ON POOR PRISON HEALTH CARE DESERVES LOOK

If an important study involving the well-being of real people falls short, get it right, don't ignore it. Even if the real people in question barely register on society's pity meter.

Unfortunately, the Illinois Department of Corrections has failed to do just that. The department has reacted far too coolly to a report released last month that concluded medical care in state prisons suffers from treatment delays, irregular follow-up care, disorganized record keeping and other problems.

This stuff is too important to ignore. The 405-page study suggests that "blatant disregard" for health complaints by one prisoner contributed to the inmate's death of cancer behind bars at age 48. It found "significant lapses in care" in an "unacceptably high" 60 percent of the cases in which prisoners died behind bars in 2013 and the first half of 2014, not counting those who died of violent causes.

The report also raised doubts about the contracting out of health care services to a private company that is paid a per-prisoner fee, which could provide an incentive to cut costs on care, an allegation the private company has denied.

While not a comprehensive look at every prison, researchers visited correctional facilities over several months and dug through thousands of prison records. Their conclusion that substandard care may have shortened inmates' lives is too troubling to leave gathering dust on a shelf somewhere.

The study grew out a federal class-action lawsuit brought in 2010 by a diabetic inmate who said IDOC displays "deliberate indifference" toward inmates' medical care. The suit now involves the American Civil Liberties Union and the state, which shared the costs of the report and agreed which prisons would be studied and which experts would be involved.

You'd think the report would be at least a serious basis for negotiations, with all sides taking its conclusions to heart and pushing forward to ensure that the state prison health care system is adequate.

*People behind bars don't have a choice in their medical services.*

While agreeing with some of the report's recommendations, IDOC initially dismissed it by saying it "uses a broad brush to paint an incomplete picture of the comprehensive medical system in place." Since then, DOC has released no other statements.

We know that prison inmates, especially those convicted of heinous crimes, aren't exactly at the top of society's list of compassion priorities. We get that inmates can't expect lavish health care from citizens who, unlike prisoners, aren't guaranteed health care and may be able to afford only basic health care themselves.

But the people behind bars don't have a choice in their medical services. They can't say they've lost confidence and go to someone else across the street. And none of them were sentenced to die in prison for lack of adequate care.

**Exhibit #2** *(handwritten in left margin)*

**VIEWPOINT** *ChiSuntimes-6-10-2015* *(handwritten)*

# Lock up fewer people to improve Illinois inmate health care

**BY DAVID M. SHAPIRO**

Stories of incompetent health care inside Illinois prisons have been legion for many years, and nearly all have been met with derisiveness by the Department of Corrections. Presented with the choice of believing prisoners or their overseers, state officials sided with the bureaucrats and declined to act.

That may be about to change.

The barbaric state of medical care in state prisons was documented recently by a team of doctors acting as court-appointed experts, and the team's blistering 405-page report leaves the state with but two choices: either spend more money on medical care of 49,000 inmates or deliver better medical care to a much smaller prison population.

The government's first option — spending its way out of the prison medical crisis by deepening the budgetary crisis — isn't really an option at all given the condition of the state's finances. Faced with this stark reality, whether one aspires to be lenient or tough on crime no longer matters much. Deincarceration has become a fiscal inevitability.

The physicians' report demonstrates that prison medical resources have been stretched beyond the breaking point. Not only are facilities dramatically understaffed, but many of the existing staff are incompetent and underqualified. These deficiencies result in unspeakable suffering and wasted lives.

For some, it might be tempting to think that the state could cut medical



A new report by court-approved researchers paints a bleak picture of medical care in Illinois prisons. | AP FILES

costs without reducing the prison population. That will not work. Hiring qualified staff with the competence to provide adequate care — the very thing that the report finds lacking — takes money.

Nor can the state refuse to take care of the people it locks up. As the Supreme Court has held, the cruel and unusual punishments clause of the Eighth Amendment requires prisons to provide adequate medical care. Incarceration prevents people from accessing their own doctors, and the government cannot — legally or morally — lock people up and leave them to waste away without the care necessary to prevent avoidable death and extreme physical suffering. A state that tries to do so will pay for it later in legal judgments.

The only solution, then, is for the government to accept fewer patients — in other words, to lock up fewer people. Gov. Rauner could accomplish this by commuting the sentences of most aging prisoners (following a risk assessment) and low-level drug offenders. Nationwide,

approximately 16 percent of prisoners have a drug crime as their offense of conviction. Another 16 percent of American prisoners are 50 or older. These older prisoners are unlikely to recidivate, and their release would have the greatest fiscal impact because they require more complex and expensive medical care.

The governor aspires to reduce the prison population by 25 percent over the next decade, but that modest goal would provide too little too late. Over the next 10 years, the costs of incarceration will continue to skyrocket and the death toll from incompetent medical care will continue to mount. The state lacks the money to spend its way out of this crisis, and the only solution is prompt action to downsize the prison system.

*David M. Shapiro is a clinical assistant professor of law and attorney for the Roderick and Solange MacArthur Justice Center at Northwestern University School of Law, Chicago.*

MR.D.V. Whitlow #S02890
2600 N. Brinten Ave
Dixon, IL 61021

Stanley J. Roszowski,
Office of the Clerk
United States Dist. Crt.
Nor. Div./West. Div.
327 S. Church St.
Rockford, IL. 61101

Legal mail